IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**LUCY RIVERA-RIVERA,**

  Plaintiff,

  v.                                              Civil Action No. 11-1245 (GAG)

**HARTFORD LIFE & ACCIDENT INSURANCE CO.,**

  Defendant.

**OPINION AND ORDER**

Plaintiff Lucy Rivera-Rivera ("Plaintiff") brought this action against Hartford Life & Accident Insurance Co. ("Defendant"), seeking to recover benefits and damages under Sections 502 (a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). Plaintiff commenced this action after the denial of her claim for long-term disability benefits under the Group Long Term Disability Plan ("Plan") for employees of Popular, Inc. This matter is presently before the court on Plaintiff's and Defendant's cross-motions for judgment on the administrative record (Docket Nos. 46 & 47). After reviewing the pertinent law, the court **GRANTS** Defendant's motion for judgment on the administrative record at Docket No. 46 and **DENIES** Plaintiff's motion at Docket No. 47.

**I.    Procedural and Factual History**

Plaintiff was employed by Popular Inc. for more than thirty years. (See Docket No. 1 ¶ 3.1.) Due to a purported illness, Plaintiff was unable to perform her duties, and requested long term disability ("LTD") benefits under the Plan. (See id.) LTD benefits are included as part of the group insurance policy no. GLT675788 for employer Popular Inc. (See Docket No. 1 ¶ 1.1.)

On March 11, 2010, Plaintiff filled out the original application for LTD insurance benefits (the "Application"). (See Docket 46-6 at 9.) On April 25, 2010, Defendant received Plaintiff's Application in which Plaintiff claimed to have a disability of her nervous system, to be unable to sit and walk for long periods of time. Plaintiff further claimed that she was taking strong medication

**Civil No. 11-1245 (GAG)**                              2

which affected her ability to work. (See Docket No. 46-4 at 46.) Plaintiff submitted she had this condition for the past fifteen years. (See Docket No. 46-4 at 45.) In the Application, Plaintiff identified Dr. Mary Miranda ("Dr. Miranda"), and Hospital Panamericano ("Hospital") as the physician and hospital who treated her for her condition. (See Docket No. 46-4 at 46-47.) On April 28, 2010, Defendant sent a letter to Plaintiff stating that her Application was incomplete and that she had twenty one days to produce the missing information. (See Docket No. 46-6 at 15.) Following receipt of the Application, Defendant sought to obtain Plaintiff's medical records. On May 27, 2010, Defendant sent a letter to Dr. Miranda requesting Plaintiff's records. (See Docket No. 46-5 at 58.) Having not received the information, on June 24, 2010, Defendant again requested that Dr. Miranda provide Plaintiff's medical records. (See Docket No. 46-5 at 59.) On that same date, Defendant informed Plaintiff that Dr. Miranda had not responded to its request and urged Plaintiff to contact Dr. Miranda to assist in this effort. (See Docket No. 46-6 at 18.) On July 7, 2010, Defendant once more asked Plaintiff to contact Dr. Miranda and request that her records be provided to Defendant. (See Docket No. 46-6 at 21.) On July 14, 2010, Defendant received Plaintiff's medical records from Dr. Miranda. (See Docket No. 46-6 at 23 -26.) On August 10, 2010, Defendant denied Plaintiff's Application for LTD benefits. (See Docket No. 46-6 at 30.) On August 23, 2010, Plaintiff appealed Defendant's denial of LTD benefits. (See Docket No. 46-6 at 35.) On October 22, 2010, Defendant denied the appeal. (See Docket No. 46-6 at 45.)

**II.     Standard of Review**

Under ERISA's civil enforcement provision, Section 502 (a)(1)(B), judicial review of a benefit entitlement decision may be the subject of two separate standards. Eusebio Cotto Villegas v. Fed. Express Corp., 468 F. Supp. 2d, 306 (D.P.R. 2006) (stating the two possible standards of review are arbitrary and capricious or de novo). The arbitrary and capricious standard applies if a reading of the plan in question indicates a clear grant of discretionary authority to the administrator in determining the eligibility for benefits of a participant or beneficiary. See Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). If the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the court

**Civil No. 11-1245 (GAG)**                3

must apply the deferential "arbitrary and capricious" standard of review. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101; Leahy, 315 F.3d at 15. "This standard means that the administrator's decision will be upheld if it is reasoned and supported by substantial evidence in the record." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (quoting Assoc. Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997)); see Vlass v. Raytheon Emp. Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001). "Evidence is 'substantial' if it is reasonably sufficient to support a conclusion." Vlass, 244 F.3d at 30 (citations omitted). "Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." Id. (citations omitted).

In defining this standard, the Supreme Court has directed reviewing courts to " consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. " Bowman Transp., Inc. v. Arkansas-Best Freight Syst., Inc., 419 U.S. 281, 285, (1974); see also Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-17(1971). This standard of review is a "narrow" one, requiring that a court not "substitute its judgment for that of the [administrator] . . . ." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29. Where such a clear grant of discretionary authority is not apparent, the standard of review is de novo. Firestone, 489 U.S. at 115; see also Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993).

Furthermore, the First Circuit has held "that a conflict of interest does not change the standard or review from deferential to de novo." Diaz v. Metro. Life Ins. Co., 688 F. Supp. 2d 49, 60 (D.P.R. 2010) (citing Cusson v. Liberty Life Assur. Co. of Boston, 592 F.3d 215, 224 (1st Cir. 2010)). The fact that an administrator both determines entitlement benefits and pays the benefits does not present such a serious conflict of interest. Sanchez-Figueroa v. Seguros de Vida Triple S, Inc., 2006 WL 2847385 at *11 (D.P.R. Sep. 29, 2006) (citing Doyle, 144 F.3d at 184). In situations where the conflict of interest is purely structural –i.e., when the insurer of an ERISA plan also serves as plan administrator– courts "must apply arbitrary and capricious review." Denmark v. Liberty Life Assur. Co. of Boston, 481 F.3d 16. "[S]pecial emphasis should be paid on reasonableness . . . with

**Civil No. 11-1245 (GAG)**                                    4

the burden on the claimant to show that the decision was improperly motivated." Sanchez-Figueroa, 2006 WL 2847385 at *11 (quoting Doyle, 144 F.3d at 184) (internal quotation marks omitted).

**III.   Discussion**

In the case at bar, the ERISA information section of the LTD policy contains a provision entitled "Claims Procedures." (See Docket No. 46-4 at 39.) The Claims Procedures provides that "the Plan has designated and named the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (See Docket No. 46-4 at 39 ¶ 8.) In addition, the two provisions in the ERISA information section concerning Defendant's discretion, provide that: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (See Docket No. 46-4 at 27.) Based upon First Circuit precedent, the court finds that this language is more than sufficient to grant discretionary authority to Defendant, and thus, the matter before the court will be analyzed under the "arbitrary and capricious" standard of review. See Wright v. R.R. Donelley & Sons Co., (1st Cir. 2005).

Plaintiff claimed November 30, 2009 was the first day she was unable to work due to an alleged disabling condition. (See Docket No. 46-4 at 46.) As part of the Application, Plaintiff submitted Dr. Miranda's statement of disability. (See Docket No. 46-5 at 2 - 3.) Dr. Miranda stated that Plaintiff's primary diagnosis was Diabetes Mellitus II and her secondary diagnosis was neuropathy, anxiety disorder and morbid obesity. (See Docket No. 46-5 at 2.) Dr. Miranda further informed that Plaintiff's symptoms were anxiety and depression. (See Docket No. 46-5 at 2.)

Dr. Miranda's notes contain an entry dated November 12, 2009, less than three weeks prior to the date on which Plaintiff claims she became disabled, which reflect that Plaintiff had been hospitalized due to depression. (See Docket No. 46-5 at 53.) Dr. Miranda's notes reflect that her plan was to restart medical treatment because patient "was unable to work at this moment ." (See Docket No. 46-5 at 53.)

Plaintiff's next appointment was on December 1, 2009, the day after Plaintiff claims she

**Civil No. 11-1245 (GAG)**　　　　　　　　　　　　5

became disabled. (See Docket No. 46-5 at 53.) Plaintiff had another appointment on March 11, 2010 and her final appointment was on June 10, 2010, at which time, Dr. Miranda noted Plaintiff's lab results and made adjustments to her diabetes medication. (See Docket No. 46-5 at 54 - 55.)

　　　　Defendant informed Plaintiff that Dr. Miranda's opinion was that Plaintiff could stand for one hour periods of time, walk for half to one hour periods of time, sit for two hour periods of time, and perform repetitive keyboard use for half hour periods of time. (See 46-6 at 31.) Defendant further informed Plaintiff that her medical records did not indicate a disability which prevented her from being able to perform the duties of a customer service representative at any time beyond November 30, 2009. (See Docket No. 46-6 at 31-32.) Because the medical records and the information provided by Dr. Miranda did not substantiate any medical conditions that prohibited Plaintiff from being able to perform her job duties, Defendant denied Plaintiff's claim and notified her of the opportunity to file an appeal. (See Docket No. 46-6 at 30-33.)

　　　　Plaintiff filed her appeal on August 17, 2010. (See Docket No. 46-6 at 35-36.) Defendant recieved Plaintiff's appeal on August 29, 2010. (See id.) In her appeal, Plaintiff did not provide any medical information to support her claim, rather she claimed that she had worked for the past 5 years as severely handicapped and her social security disability claim had been approved. On September 28, 2010, Defendant requested that Plaintiff provide Defendant with all of her medical records from November 2009 to the present, along with any medical information provided to the Social Security Administration ("SSA") or that it obtained in connection with her SSA application. (See Docket No. 46-6 at 40.) Plaintiff claimed she did not have any information from the SSA and that she had already provided Dr. Miranda's records. (See Docket No. 46-6 at 42-43.) Plaintiff did provide Defendant with records of her hospitalization records in October 2009. (See Docket No. 46-6 at 46 ¶ 2.) The hospital records reflect that Plaintiff was admitted for treatment due to symptoms of depression on October 5, 2009. (See Docket No. 46-5 at 85.) While hospitalized, Plaintiff's mood gradually improved and she requested a reduction in medication, which she had tolerated well. (See Docket No. 46-5 at 85.) On October 16, 2009, Plaintiff was discharged, at which time she was "observed as alert, coherent and logical, oriented in three spheres." (See Docket No. 46-5 at 85.)

**Civil No. 11-1245 (GAG)**                6

As part of her treatment while hospitalized, Plaintiff received occupational therapy in which she received the maximum grades on all items as to which she was graded. (See Docket No. 46-5 at 87.)

Through an October 22, 2010 letter from Defendant's Appeals Specialist Deanie Wallis ("Wallis") to Plaintiff, Defendant upheld its denial of Plaintiff's benefit claim. (See Docket No. 46-6 at 45-46.) Wallis explained that none of Dr. Miranda's medical records contained any records of physical examinations or discussions of Plaintiff's functionality, which substantiated Plaintiff's inability to perform her occupational duties. (See id.)

In addition to explaining that Dr. Miranda's records did not evidence any functional limitations substantiating disability, Ms. Wallis explained that the hospital records Plaintiff provided evidenced that she was hospitalized more than forty five days prior to her last day of work for depression, and that upon discharge, Plaintiff was stable, alert, coherent and logical. (See Docket No. 46-6 at 46.) Wallis explained that this information did not establish that Plaintiff was precluded by disability from performing the duties of her profession. (See id.)

Upon review of the administrative record, the court finds that the administrator's decision was impartial, not influenced by documents or other evidence not found in the record. The Administrator stated she relied upon medical and hospital records in order to reach the conclusion that Plaintiff did not meet the standards for LTD benefits. (See Docket No. 46-6 at 45-46.) The court finds that it is reasonable for the Administrator to use these documents in order to reach a decision as to Plaintiff's LTD benefits. The court finds this decision was made in a reasonable manner, therefore it was not made arbitrarily or capriciously. The decision was based on the documents submitted by Plaintiff as well as medical and hospital records. (See id.)

**IV.  Conclusion**

For the foregoing reasons, the court **GRANTS** Defendant's motion for judgment on the administrative record (Docket No. 46) and **DENIES** Plaintiff's Motion (Docket No. 47). Given the court's ruling in this matter, it becomes unnecessary for the court to address plaintiff's other claims.

**Civil No. 11-1245 (GAG)**                    7

    **SO ORDERED**

    In San Juan, Puerto Rico this 22nd day of February, 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge
